UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGG MARCELLUS HARDEN,

        Plaintiff,

v.                                    Case No:  2:25-cv-01036-JES-KHR

DEPUTY S. ABREU, Badge No.
22137, in his individual
capacity,    and    CARMINE
MARCENO, in his official
capacity as SHERIFF OF LEE
COUNTY, FLORIDA,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of Defendants'
Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #35)
filed on February 27, 2026.  Plaintiff filed no response, even
after the Court directed him to do so.  (Doc. #44.)  Accordingly,
the Court will rule on the motion without the benefit of a
response.  For the reasons set forth below, Defendants' motion is
granted in part and denied in part.

**I.**

**A.    Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint
must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As the Eleventh Circuit has recently summarized:

> When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. When making the determination of whether a complaint states a plausible claim, we draw on our judicial experience and common sense.
> . . .
> We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations ... to determine whether they plausibly suggest an entitlement to relief.

Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp., 147 F.4th 1341, 1346-47 (11th Cir. 2025)(citations and internal punctuation omitted).

Pro se pleadings are held to a less stringent standard than counseled pleadings and, therefore, are liberally construed. Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014).

Nevertheless, this liberal construction does not entitle a court to serve as de facto counsel to a pro se party or rewrite deficient pleadings. See id. at 1168-69. Pro se litigants, however, are still required to conform to procedural rules. See Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007); Goldsboro v. Ivey, No. 25-11394, 2026 WL 507421, at *3 (11th Cir. Feb. 24, 2026).

**B.    The Court Will Consider the Body-Camera Footage**

In deciding a motion to dismiss, district courts generally must limit their consideration to the pleadings and any exhibits attached to the pleadings. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). Where the Court considers evidence outside the complaint, the motion to dismiss must be converted into a motion for summary judgment, unless the evidence can be considered under the incorporation-by-reference doctrine or judicial notice. Baker v. City of Madison, 67 F.4th 1268, 1276-77 (11th Cir. 2023)(quotations omitted).

The incorporation-by-reference doctrine permits a court to properly consider documents not referred to or attached to a complaint "if the document is[:] (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024). "[W]here [the] video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's

depiction instead of the complaint's account, and [we] view the facts in the light depicted by the video." Baker, 67 F.4th at 1277-78 (citation omitted).  On the other hand, the Court "must construe all ambiguities in the video footage in favor of the plaintiff." Id. at 1277.

Defendants filed four body-camera videos from the November 2, 2025 incident.  (Doc. #25, Exhs. A-D.)  Exhibits A and B are Deputy Steven Abreu's ("Deputy Abreu") and Deputy Fratianni's body-camera footage from the initial traffic stop, respectively.[1]  Exhibit C is Deputy Abreu's body-camera footage from Emergency Medical Services ("EMS") arriving at the Edison Mall parking lot and Harden's treatment at the hospital.  Exhibit D is Deputy Abreu's body-camera footage of Harden's arrival to the jail.

The videos depict the events central to Plaintiff's claims — Deputy Abreu's refusal to call EMS after learning of Harden's injury and failure to provide appropriate accommodations — and Plaintiff has not shown any of the videos have been altered.  The Court further finds the trustworthiness of the recordings is not in question.  See Johnson, 107 F.4th at 1301.  Accordingly, the Court will consider the videos under the incorporation-by-

---

[1] Deputy Fratianni is not a defendant in the instant case.

reference doctrine.  See Swinford v. Santos, 121 F.4th 179, 188 (11th Cir. 2024).

## II.

On November 2, 2025, around 9:24 P.M., Deputies Abreu and Fratianni initiated a traffic stop.  Deputy Abreu approached the driver's side, where a woman was sitting, and Deputy Fratianni approached the passenger's side, where Harden was sitting in the backseat.  (Exh. A at 00:00-00:28; Exh. B at 00:00-00:28.)  Deputy Abreu accused Harden and the female driver of switching seats which they initially denied.[2]  (Exh. A at 00:30-00:39; Exh. B at 00:30-00:35.)  Deputy Fratianni ordered Harden to exit the vehicle which prompted Harden to inform Deputy Fratianni of his broken leg.[3] (Exh. A at 00:39; Exh. B at 00:35-00:47; Doc. #18, ¶ 10.)

After patting Harden down, Deputy Fratianni told Harden to "go hobble over" to the sidewalk.  (Exh. B at 00:50-00:54.)  Harden requested his cane before doing so, but the deputies were unable to locate the cane and the female driver said she "guess[ed] he

---

[2] Defendants state Harden was driving, however, at this stage the Court must treat all well-plead allegations in the Second Amended Complaint ("SAC") as true.  The videos do not clearly contradict Harden's allegations as no video shows Harden driving and Harden continued to deny driving.  See Baker, 67 F.4th at 1277.

[3] When Harden informed Deputy Fratianni, Deputy Abreu was on the driver's side of the vehicle where the driver pointed out Harden's leg was swollen.

left it at the house." (Exh. A at 01:01-01:19; Exh. B at 00:51-01:11.) Harden then hopped to the nearby sidewalk and sat down as instructed. (Exh. B at 01:12-01:21.)

Deputy Fratianni questioned Harden about Harden's lack of shoes — as the deputies found shoes on the driver's side floorboard, supporting their suspicion Harden changed seats with the female driver. (Exh. B at 01:52-01:56.) Harden claimed he could not wear shoes because his "leg [was] broke"[4] and claimed the shoes belonged to the female driver who was still wearing her own shoes. (Id.) Deputy Abreu then ordered the female driver to sit next to Harden and obtained the female's driver's license and Harden's name, before searching the vehicle since it smelled of marijuana. (Exh. B at 02:20-02:38.)

Deputy Abreu's search and background check lasted approximately twenty minutes while Harden sat on the sidewalk.[5] Once Deputy Abreu discovered a warrant for Harden's arrest, Deputy Abreu placed him in handcuffs and escorted Harden, with the assistance of Deputy Fratianni, to Deputy Abreu's vehicle. (Exh.

---

[4] At this point, Harden has said three times that his leg was broken.

[5] Throughout the interaction, the deputies regularly turned off the audio recording. See Exh. A at 16:21-21:37, 21:45-23:47, 27:17-38:33, 40:43-46:40; Exh. B at 16:36-17:00, 21:43-23:28, 30:03-30:10, 30:24-32:27, 35:35-38:37, 39:47-39:50; 40:37-40:51. Therefore, the Court cannot say with certainty that Harden never requested medical attention for his broken leg during these times.

A at 24:00-24:30; Exh. B at 23:49-24:21.)    Harden warned the deputies that he "can't walk fast, sir. I can't do that."  (Exh. A at 24:25-24:30; Exh. B at 24:20-24:21.)  Once Harden made it to Deputy Abreu's vehicle about a minute later, Deputy Abreu searched Harden before placing him in the backseat.[6]  (Exh. A at 25:14-25:44; Exh. B at 20:20-25:25.)

Twelve minutes go by where Deputy Abreu was in and out of his vehicle before Deputy Abreu read Harden his Miranda rights.[7]  (Exh. A at 38:40-38:43.)  Harden initially agreed to speak with Deputy Abreu, and continued denying switching seats, but invoked his right to remain silent and stated "let's go to jail bro."  (Exh. A at 38:43-40:34.)

Rather than take Harden to jail immediately, Deputy Abreu, for some unknown reason, appears to have sat in the parking lot of the Edison Mall for at least an hour, if not two hours.[8]  (Exh. C at 00:00-00:10.)  After Harden's repeated requests, Deputy Abreu

---

[6] Harden again complained that he could not place weight on his broken leg, to which Deputy Fratianni offered support by saying "I'll hold you on this side."  (Exh. A at 25:15-25:25; Exh. B at 25:14-25:18.)

[7] During these twelve minutes, the deputies regularly muted their audio. See supra note 5.

[8] The Court makes this inference based upon the time-stamps at the time of the arrest — 9:48pm — and the time EMS arrived in the Edison Mall parking lot — 11:41pm.  (Exh. A at 23:56; Exh. C at 00:00.)  Further, in the video, Harden yells Deputy Abreu had been "sitting here for a whole hour bruh" where Harden was "askin' for EMS for a whole hour."  (Exh. C at 3:10-3:17, 3:20-3:25.)

requested EMS, who arrived and looked at Harden's foot.  (Id. at 00:00-00:15.)  EMS began to unload the gurney to transport Harden to the hospital, but Deputy Abreu transported Harden to the hospital instead.  (Id. at 8:20-13:05.)

Harden arrived at the hospital approximately six minutes later, around midnight.  (Id. at 18:50-19:00.)  Deputy Abreu brought Harden inside via a wheelchair. (Id. at 20:50-21:30.) After two hours in the hospital, Harden was diagnosed with four healing fractures — in his heel, tibia, fibula, and ankle.[9]  (Id. at 1:30:40-1:31:35.)  Once Harden's leg was placed in a cast, he was transported to the jail and taken inside via a wheelchair. (Exh. D at 00:00-01:12.)

Harden now brings federal and state claims against Sheriff Carmine Marceno ("Sheriff Marceno") in his official capacity and Deputy Abreu.

### III.

**A.    Count I — Harden Is Disabled Under the Americans with Disabilities Act**

Harden alleges Sheriff Marceno violated Title II of the Americans with Disabilities Act ("ADA") by: (1) requiring Harden

---

[9] The events within the hospital are not relevant for the purposes of the instant motion, other than that Harden received treatment for the injury.  Accordingly, the Court will not discuss those additional facts.

to walk on his broken leg; (2) delaying EMS attention; and (3) failing to provide safe transport or stabilization.  (Doc. #18, ¶¶ 32-38.)  Sheriff Marceno argues Harden fails to state a disability discrimination claim.  (Doc. #35, p. 11.)  Specifically, Sheriff Marceno argues Harden's broken leg is not a disability since it is a short-term, temporary restriction and Harden did not allege sufficient facts that his injury substantially limited any of his major life activities.[10]  (Id. at pp. 12-14.)  Neither argument is persuasive to the Court.

Title II of the ADA prohibits a "public entity" from discriminating against "a qualified individual with a disability." 42 U.S.C. § 12132.  To state a Title II claim, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, program, or activities, or otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was because of the plaintiff's disability.  See Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)(citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)).  A qualified individual is "an individual with a

---

[10] Sheriff Marceno only challenged the first element of Harden's ADA claim, so the Court makes no comment as to the sufficiency of the allegations for the second and third elements.

disability who, with or without reasonable modifications . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." See 42 U.S.C. § 12131(2).

A "disability" includes a "physical or mental impairment that substantially limits one or more major life activities of such individual."[11]   See id. § 12102(1)(A).   A "physical or mental impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . .."   29 C.F.R. § 1630.2(h).

Sheriff Marceno's argument that Harden is not disabled assumes Harden brings a "regarded as" claim.   This assumption is incorrect.   After Congress passed the ADA Amendments Act of 2008 ("ADAAA"), the Equal Employment Opportunity Commission ("EEOC")

---

[11] Disability also includes "a record of such an impairment" or "being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(B)-(C).   These, however, are not relevant to the instant motion.

amended its regulations to broadly construe "substantially limits" in favor of expansive coverage.  See id. § 1630.2(j)(1)(i).  The regulations clarified that "[t]he six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage in § 1630.15(f) does not apply to the definition of 'disability' under paragraph[] (g)(1)(i)(the 'actual disability' prong). . . ."  See id. § 1630.2(j)(1)(ix).  Since Harden alleges a claim under the "actual disability" prong, a short-term, temporary restriction will not prevent him from being "disabled."[12]

Similarly, Sheriff Marceno's argument that Harden fails to allege sufficient facts showing how Harden's injury substantially limits a major life activity is unavailing.  Major life activities include, among other things, walking and standing.  See 42 U.S.C. § 12102(2)(A).  Harden sufficiently alleges facts that his disability substantially limits his walking and standing.  The SAC alleges Harden could not place weight on his leg and the body-cameras show Harden hopping, limping, and requiring assistance to walk to Deputy Abreu's vehicle.  Though a modest extent of facts,

---

[12] While Harden alleges he had a "medically documented disability," this allegation relies upon the diagnosis obtained after Harden was taken to the hospital for evaluation.  Therefore, Harden cannot present a "record of" disability claim.

they are sufficient for the instant motion.[13]   Accordingly, the Motion to Dismiss is denied as to Count I.

**B.   Count II — Deputy Abreu Is Not Entitled to Qualified Immunity at this Stage in the Proceedings**

Next, Harden asserts Deputy Abreu was deliberately indifferent to his serious medical need by: (1) requiring Harden to exit the car and walk without support; (2) denying or delaying EMS evaluation; (3) failing to provide reasonable assistance or stabilization during transport; (4) forcing Harden to put weight on his injured leg; and (5) failing to allow EMS to transport Harden to the hospital.   (Doc. #18, ¶¶ 42-43.)   Deputy Abreu contends he is entitled to qualified immunity.   (Doc. #35, p. 15.)

**(1)   Qualified Immunity Principles**

The qualified immunity principles are well-established. Qualified immunity protects government officials from civil litigation and liability for torts committed while performing discretionary duties unless the conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known.   Gervin v. Florence, 139 F.4th

---

[13] While Sheriff Marceno points to Harden's alleged ability to drive and walk without a cane as well as Harden's lack of shoes, these are not the smoking gun he believes them to be.   First, since the videos do not clearly contradict the SAC, the Court must accept Harden's allegation that he was a passenger, not the driver.   Second, Harden's use of a cane and lack of shoes are irrelevant because his physical injury still substantially limited his ability to walk and stand.

1236, 1260 (11th Cir. 2025); Huggins v. Sch. Dist. of Manatee Cnty., 151 F.4th 1268, 1278 (11th Cir. 2025).

Courts employ a burden-shifting analysis to determine whether official conduct is protected by qualified immunity. Huggins, 151 F.4th at 1278. First, the official must prove he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. Id.; DeMarcus v. Univ. of S. Ala., 133 F.4th 1305, 1317 (11th Cir. 2025). The actions must have been undertaken pursuant to the official's duties and within the scope of his authority.[14] Huggins, 151 F.4th at 1278. A district court looks to the general nature of defendant's action, temporarily disregarding the alleged illegality of that act. Nute v. White, 152 F.4th 1311, 1317 (11th Cir. 2025).

Second, if the official makes the required showing, the burden shifts to plaintiff to show that: (1) the conduct violated his statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. Watkins v. Davis, 156 F.4th 1084, 1097 (11th Cir. 2025). For the law to be

---

[14] Here, it is undisputed Deputy Abreu acted within the scope of his discretionary authority. Harden alleges Deputy Abreu "act[ed] under color of state law" and Deputy Abreu performed his duties as a deputy when initiating a traffic stop and arresting Harden. (Doc. #18, ¶ 5.) Therefore, the Court will only consider whether Deputy Abreu violated a constitutional right and whether such right was clearly established at the time.

-13-

clearly established, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." King v. Pridmore, 961 F.3d 1135, 1145 (11th Cir. 2020)(quoting Hudson v. Hall, 231 F.3d 1289, 1294 (11th. Cir. 2000)). Generally, "a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." Watkins, 156 F.4th at 1097.

Plaintiff can show the law was "clearly established" in any of three ways: (1) identifying a qualifying case with indistinguishable facts;[15] (2) relying on a broader, clearly established principle that should control the novel facts at hand; or (3) showing that the officers' conduct was so egregious that a constitutional right was clearly violated, even in the total absence of case law. See Andre v. Clayton Cnty., 148 F.4th 1282,

---

[15] A plaintiff may only rely upon binding decisions of (1) the Supreme Court of the United States; (2) the United States Court of Appeals for the Eleventh Circuit; and (3) the highest court of the pertinent state, here the Florida Supreme Court. Gervin, 139 F.4th at 1264; Wate v. Kubler, 839 F.3d 1012, 1018 (11th Cir. 2016).

-14-

1298 (11th Cir. 2025); Aguirre v. Seminole Cnty., 158 F.4th 1276, 1296-97 (11th Cir. 2025).

Qualified immunity is a question of law which may be asserted in a Rule 12(b)(6) motion to dismiss. See Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1294 (11th Cir. 2003). "When a defendant moves to dismiss a complaint on qualified-immunity grounds, 'the district court must dismiss any claims that fail to allege a violation of clearly established law.'" Andre, 148 F.4th at 1291 (quoting Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022), abrogated on other grounds by, Case v. Montana, 607 U.S. 107 (2026)(holding the probable-cause decisions do not apply to "emergency-aid situations")).

### (2)   Harden Plausibly Alleges a Violation of His Constitutional Right

As a pre-trial detainee, Harden's rights exist under the due process clause of the Fourteenth Amendment. See Christmas v. Nabors, 76 F.4th 1320, 1331 (11th Cir. 2023). Regardless, Harden's claim is still subject to the same scrutiny as under the Eighth Amendment. See id. (citing Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985)). Accordingly, to state a deliberate indifference to a serious medical need claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation. See id. at 1335

(citing Taylor v. Hughes, 920 F.3d 729, 732-33 (11th Cir. 2019)).
Deputy Abreu argues Harden failed to allege both a serious medical
need and that Deputy Abreu was deliberately indifferent to this
need.

> **(a)  Harden's Broken Leg Is a Serious Medical Need**

A serious medical need is "one that has been diagnosed by a
physician as mandating treatment or one that is so obvious that
even a lay person would easily recognize the necessity for a
doctor's attention."  See Farrow v. West, 320 F.3d 1235, 1243 (11th
Cir. 2003)(quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d
1176, 1187 (11th Cir. 1994), abrogated on other grounds by, Hope
v. Pelzer, 536 U.S. 730 (2002)).  In either case, the medical need
still must be "one that, if left unattended, 'pos[es] a substantial
risk of serious harm.'"  See id. (quoting Taylor v. Adams, 221
F.3d 1254, 1258 (11th Cir. 2000)(alteration in original)).

Harden plausibly alleges he had a serious medical need because
he states he suffered from a broken bone.  See Harris v. Coweta
Cnty., 21 F.3d 388, 394 (11th Cir. 1994)(stating that a "few hours'
delay in receiving medical care . . . for broken bones . . . may
constitute deliberate indifference); Brown v. Hughes, 894 F.2d
1533, 1538 (11th Cir. 1990)(citing Hughes v. Noble, 295 F.2d 495

(5th Cir. 1961)[16])(stating a broken bone is a constitutionally cognizable injury and can serve as basis for deliberate indifference claim); Clark v. Sheffield, 807 F. App'x 910, 915 (11th Cir. 2020)(stating the Eleventh Circuit has found pain caused by a broken foot is a serious medical need). While the allegations may be barebones, they are sufficient for purposes of the instant motion.

### (b) Under the Alleged Facts, Deputy Abreu Acted with Deliberate Indifference

Harden, however, still must allege facts showing Deputy Abreu acted with deliberate indifference. To prove an official acted with deliberate indifference, a plaintiff must show the official "acted with subjective recklessness as used in the criminal law." See Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024)(en banc)(citation and quotation marks omitted). This requires that "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." See id. The official, however, cannot be found liable "if he responded reasonably to that risk" even if the official knew of a substantial risk to a detainee's health or safety. See

---

[16] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all the decisions the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

id. (quoting Farmer v. Brennan, 511 U.S. 834, 844-45 (1994)).  A plaintiff may also prove deliberate indifference where officials "delay treatment for life-threatening emergencies, [and] also in 'situations where it is apparent that delay would detrimentally exacerbate the medical problem.'"  See Nealy v. Masters, 2025 WL 3297835, at *2 (11th Cir. Nov. 26, 2025)(quoting Hill, 40 F.3d at 1187, abrogated on other grounds by, Hope, 536 U.S. 730).

Harden plausibly alleges Deputy Abreu's delay in treatment constituted deliberate indifference.  Deputy Abreu had subjective knowledge of the risk given Harden's repeated requests for medical attention, visible swollen foot, limping and hopping, inability to place weight on his foot, and repeated winces in pain.  Even with this knowledge Deputy Abreu sat in the Edison Mall parking lot for at least an hour after arresting Harden and failed to call or seek medical attention for approximately two hours after arresting Harden.  These facts support an inference that the unexplained delay in care is a situation "where it is apparent that delay would detrimentally exacerbate the medical problem."  See Nealy, 2025 WL 3297835, at *2 (quoting Hill, 40 F.3d at 1187, abrogated on other grounds by, Hope, 536 U.S. 730).  Accordingly, the facts plausibly allege Deputy Abreu violated a constitutional right.

-18-

### (3)  The Right Was Clearly Established

Deputy Abreu next argues that "there is no clearly established law that Abreu should have summoned EMS or take Mr. Harden to the hospital as soon as he encountered him, and Mr. Harden mentioned he had a broken leg."  (Doc. #35, p. 21.)  Though Deputy Abreu is partially correct, his argument misses the mark.  The conduct at issue is not his refusal to immediately call EMS, but his alleged deliberate, unexplained delay in obtaining care for approximately two hours.

There is no question that an officer's deliberate indifference to a pre-trial detainee's medical needs violates a constitutional right.  See Wade, 106 F.4th at 1255; see, e.g., Christmas, 76 F.4th at 1335 ("[P]retrial detainees 'have a right to receive medical treatment for their illnesses and injuries."); Hughes, 920 F.3d at 732-33 (stating the same proposition); Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)(same); Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007)(same); Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir. 1988)(same); Harris, 21 F.3d at 393 (citing Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989))(same); Hill, 40 F.3d at 1186-87 (citing Estelle, 429 U.S. at 103)(same); Brown, 894 F.2d at 1537 (citing Estelle, 429 U.S. at 104)(same).  The contours of what constitutes deliberate indifference, however, have been clarified over the

-19-

decades since Estelle.  Particularly relevant here is the delay in treatment of serious and painful injuries.  See Brown, 894 F.2d at 1537; Harris, 21 F.3d at 393 (citing Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988)).  To preclude qualified immunity, the pre-existing law must give officials a sense of the amount of time that constitutes actionable delay.  The pre-existing law was sufficiently clear in this case.

Whether the delay in care constitutes deliberate indifference depends on the nature of the medical need and reason for the delay. Where faced with emergency medical needs — e.g., broken bones and bleeding cuts — just a few hours' delay may constitute deliberate indifference.  See Brown, 894 F.2d at 1538.  On the other hand, injuries of a lesser degree of immediacy — e.g., rash, constipation, significant weight loss, loss of amniotic fluid — that are serious, obvious medical needs may still give rise to deliberate indifference with longer delays.  See Goebert, 510 F.3d at 1317-19; Fikes v. Abernathy, 793 F. App'x 913, 924 (11th Cir. 2019); Carswell v. Bay Cnty., 854 F.2d 454, 456-57 (11th Cir. 1988).  Deliberate indifference can be inferred from an unexplained delay in treating a known or obvious medical condition.  Brown, 894 F.2d at 1538.

With these contours in mind, a reasonable deputy with Deputy Abreu's information would be able to understand whether his actions

were lawful.  Deputy Abreu — as alleged <u>in</u> the SAC — was fully aware of Harden's broken leg after Harden informed Deputy Abreu and he saw the leg's visible swelling.  Despite this knowledge, Deputy Abreu opted to detain Harden for approximately two hours — at least one of which was spent sitting in the Edison Mall parking lot — before summoning EMS.  No alleged facts explain the reason for the delay.  A reasonable deputy could not reasonably consider this inaction lawful.  Accordingly, Deputy Abreu is not entitled to qualified immunity at this stage in the proceedings and the motion is denied as to count II.[17]

**C.   Counts III & IV — Harden Fails to Allege a Custom or Practice**

Sheriff Marceno argues Counts III and IV must be dismissed because: (1) there is no underlying constitutional violation by Deputy Abreu; and (2) Harden fails to allege facts to show a widespread practice or custom.  (Doc. #35, pp. 21-22.)  Since the Court concluded there are sufficient facts to plausibly alleged Deputy Abreu violated Harden's constitutional right, the Court will only analyze whether Harden sufficiently alleges a custom or practice.  The Court finds he has not done so.

---

[17] Of course, simply because Deputy Abreu is not entitled to qualified immunity at the motion to dismiss stage does not mean he is liable.

A municipality cannot be held vicariously liable for the constitutional violations of its employees.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The government as an entity may be responsible, however, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  See id. at 694.  To impose such liability, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.  See Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021)(quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Liability may be based on an official policy or "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker."  Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1131 (11th Cir. 2021)(quoting Church v. City of Huntsville, 30 F.3d 1332, 1342-43 (11th Cir. 1994)).  "[A] policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while a "custom is an unwritten practice that is applied

consistently enough to have the same effect as a policy with the force of law." See Goebert, 510 F.3d at 1332 (citations omitted).

When a plaintiff alleges a failure to train, they must allege facts showing the failure to train "evidences a deliberate indifference" to the municipality's inhabitants' rights. See Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009)(citation omitted). There must be "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id. A plaintiff can show this in two ways. First, there exists "[a] pattern of similar constitutional violations by untrained employees . . .." See Connick v. Thompson, 563 U.S. 51, 62 (2011). Second, even without prior events, the plaintiff can establish deliberate indifference "if the likelihood for constitutional violation is so high that the need for training would be obvious." See Lewis, 561 F.3d at 1293. Harden fails to allege sufficient facts showing either.

Beginning with Harden's allegations of a widespread practice, Harden relies upon two factual allegations: (1) Lee County Sheriff's Office deputies "routinely encounter detainees with visible injuries or mobility impairments;" and (2) a prior incident in King v. Lee County, Case No. 2:24-cv-375-JLB-KCD. (Doc. #18, ¶¶ 19, 57.) Neither allegation is sufficient to establish a

-23-

widespread practice. Harden's first allegation that deputies "routinely encounter detainees" is conclusory. See Twombly, 550 U.S. at 555 (holding that threadbare recitals of the elements, supported by conclusory statements, are insufficient to state a claim). It provides no allegations on the who, what, when, or where and therefore cannot support his claim. Harden's reliance on King also fails because the violations in King relate to an unlawful seizure and excessive force after the plaintiff was taken into custody pursuant to the Baker Act, rather than deliberate indifference to a serious medical need. See King, No. 2:24-cv-375-JLB-KCD, 2025 WL 676224, at *18 (M.D. Fla. Mar. 3, 2025). The only remaining allegations concern his own experience and are therefore insufficient to establish a policy or custom. See Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011)(quoting City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985)).

Harden's allegation that the likelihood for constitutional violation is so high is similarly lacking. Cases concerning a high likelihood of a constitutional violation are "a narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence" of a failure to provide adequate training. See Lewis, 561 F.3d at 1293 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997)); see also City of Canton v. Harris, 489 U.S. 378, 390 n.10

(1989)(noting, in dictum, as an example the situation where city policymakers knew of the need to train officers in the constitutional limitations on the use of deadly force because the city knows to a "moral certainty that their police officers will be required to arrest fleeing felons[, and] armed its officers with firearms, in part to allow them to accomplish this task."). The instant case does not rise to this level as alleged because any failure to train deputies to provide medical care does not present a highly predictable risk of constitutional violations that would be "obvious in the abstract." See Bd. of Cnty. Comm'rs, 520 U.S. at 410. Accordingly, Harden has failed to allege sufficient facts and Counts III and IV are dismissed without prejudice.

### D. Count V – Harden Failed to Plead Compliance with Condition Precedents but Sufficiently Alleges Willful and Wanton Conduct

Harden asserts a negligence claim against Sheriff Marceno and Deputy Abreu. Sheriff Marceno argues that Harden's claim must be dismissed for failure to comply with the condition precedent of Florida Statutes section 768.26(6). Deputy Abreu argues Harden's claim must be dismissed because he has not pled sufficient facts to overcome his entitlement to statutory immunity. The Court addresses each in turn.

To state a claim for negligence, a plaintiff must allege: (1) a duty; (2) breach of that duty; (3) causation; and (4) damages. See Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1339 (11th Cir. 2012). Prior to bringing a claim against the state or one of its agencies or subdivisions, however, a plaintiff must provide pre-suit notice pursuant to Florida Statutes section 768.28(6). See Fla. Stat. § 768.28(6). Additionally, where an officer is sued, they may not be personally liable in tort for "any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See id. § 768.28(9)(a).

Here, Harden failed to plead compliance with the condition precedent to bringing the negligence claim against Sheriff Marceno in his official capacity. Though Harden is only required to generally plead compliance, the SAC has no allegations about either providing the pre-suit notice or complying with all conditions precedent. (Doc. #18.) Without such allegations, Harden fails to overcome Sheriff Marceno's immunity. See Turner v. Homestead Police Dep't, 828 F. App'x 541, 545-46 (11th Cir. 2020)(citing Fla. Stat. § 768.28(6)); Barreto-Baerga v. Osceola Cnty., No. 6:25-cv-98-PGB-LHP, 2026 WL 851667, at *7 (M.D. Fla. Mar. 29, 2026).

Accordingly, Count V is dismissed without prejudice as to Sheriff Marceno.

Harden, however, alleges sufficient facts to overcome Deputy Abreu's entitlement to immunity pursuant to section 768.28(9)(a).[18] To overcome the entitlement to immunity, Harden must show that Deputy Abreu acted either in "bad faith," "with malicious purpose," or "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See Fla. Stat. § 768.28(9)(a).

The first two exceptions, "in bad faith" and "with malicious purpose," are "synonymous with each other under Florida law" and are equivalent to the "actual malice standard." See Coleman v. Hillsborough Cnty., 41 F.4th 1319, 1325 (11th Cir. 2022)(quoting Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020)). The third exception will strip officers of their immunity where their conduct is "wanton and willful." "Wanton means 'with a conscious and intentional indifference to consequences with the knowledge that damage is likely to be done to persons or property'" and "[w]illful means 'intentionally, knowingly and purposely.'" See id. "Together those terms describe 'conduct much more

---

[18] Since Abreu dedicates a portion of his SAC to "Willful Misconduct," the Court will analyze those factual allegations in relation to whether Deputy Abreu is entitled to immunity. (Doc. #18, ¶¶ 29-31; 71-76.) While the Court dismisses Count VI as an independent cause of action, it still liberally construes Harden's pleading.

reprehensible and unacceptable than mere intentional conduct.'" Id.

The Court need only discuss the third exception as Harden pleads sufficient facts to show Deputy Abreu acted in a manner exhibiting wanton and willful disregard of human rights, safety, or property.  As discussed above, Deputy Abreu is alleged to have deliberately disregarded Harden's serious medical need by delaying medical care for approximately two hours.  See supra Section III.B.2.  This is sufficient to permit a reasonable inference that Deputy Abreu acted "with a conscious and intentional indifference to consequences with the knowledge that damage is likely to be done to" Harden.  See Coleman, 41 F.4th at 1325.  Further, a reasonable inference can be drawn that Deputy Abreu acted willfully because he waited approximately two hours after arresting Harden before calling EMS.  Accordingly, Deputy Abreu is not entitled to statutory immunity for purposes of the instant motion.

**E.   Count VI – Willful and Wanton Misconduct Is Not an Independent Cause of Action**

Finally, Harden brings a "Willful Misconduct" claim under Florida Statutes section 768.28(9)(a).  Deputy Abreu contends this is just an additional claim of negligence; however, the Court cannot tell what Harden's cause of action is.

-28-

Harden cites Florida Statutes Section 768.28(9)(a) as the basis for the cause of action, however the statute only deals with sovereign immunity as it relates to underlying tort claims. See Fla. Stat. § 768.28(9)(a). The Court cannot find any caselaw where the statute was found to create an independent cause of action. See, e.g., Plowright v. Miami Dade Cnty., 102 F.4th 1358 (11th Cir. 2024)(discussing the application of statutory immunity to an intentional infliction of emotional distress claim); Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1330 (11th Cir. 2015)(discussing the application of statutory immunity to intentional infliction of emotional distress and malicious prosecution claims); Castro-Reyes v. City of Opa-Locka, 166 F.4th 886, 903 (11th Cir. 2026)(discussing the application of statutory immunity to assault and battery claims); Aguirre, 158 F.4th at 1310 (discussing the application of statutory immunity to an intentional infliction of emotional distress claim). Since Harden fails to identify an underlying tort, Count VI currently fails to state a claim. Accordingly, the Motion to Dismiss will be granted as to Count VI.

For the reasons set forth in this order, the motion to dismiss will be granted in part and denied in part.

Accordingly, it is now

**ORDERED:**

-29-

(1)  Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #35) is **GRANTED IN PART AND DENIED IN PART as follows:**

   (a)  Defendants' Motion to Dismiss Counts I-II is **DENIED.**

   (b)  Counts III-IV are **DISMISSED without prejudice.**

   (c)  Count V is **DISMISSED without prejudice** as to Sheriff Carmine Marceno in his official capacity. Defendants' Motion to Dismiss Count V as to Deputy Abreu is **DENIED.**

   (d)  Count VI is **DISMISSED without prejudice.**

(2)  The Clerk shall withhold the entry of Judgment until the conclusion of the case.

   **DONE AND ORDERED** at Fort Myers, Florida, this ___8th___ day of June 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-30-